# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MISCHELLE RICHTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-01179-CV-W-JTM |
| | ) |
| ADVANCE AUTO PARTS, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Plaintiff Mischelle Richter ("Richter") was employed by defendant Advance Auto Parts, Inc. ("Advance Auto") from 1999 until August 25, 2009.[1] On August 18, 2009, Richter filed an administrative claim of employment discrimination specifically alleging that she had been subjected to race and sex discrimination while working at Advance Auto on August 14, 2009. On the forms, Richter checked the boxes for "RACE" and "SEX" and checked no other boxes. Specifically, Richer did not check the box for "RETALIATION." Further, in the narrative portion of her claim, Richter expressly stated:

> I believe I was discharged because of my race, white, and sex, female, which is in violation of Title VII of the Civil Rights Act of 1964 as amended.

The investigating agencies eventually concluded that Richter did not suffer from race and/or sex discrimination. Richter filed no other discrimination complaints.

---

[1] On August 14, 2009, Richter was notified that she was removed from her current position [Store Manager] and had one week to apply for another (lower-paying) position with Advance Auto. Richter chose not to apply for the other position. On August 25, 2009, Advance Auto informed Richter that she was "officially terminated."

In the case before the Court, Richter alleges, in part, that Advance Auto violated Title VII and the Missouri Human Rights Act ("MHRA") when it allegedly retaliated against her <u>after</u> she filed her sex/race discrimination charge. Advance Auto has moved to dismiss the Title VII/ MHRA claim, arguing that there has been no exhaustion of administrative remedies. Richter does not dispute the necessity for exhaustion, but argues that her retaliation claims are effectively exhausted under the principle set forth in *Wedow v. Kansas City, Mo.*, 442 F.3d 661, 673 (8th Cir. 2006). Indeed, under *Wedow* and similar cases, federal courts have deemed exhaustion satisfied where the allegations in the judicial complaint "are like or reasonably related to" the administrative charges that were timely brought. *Wedow* – which involved ongoing retaliation raised in the administrative claim that occurred before the administrative claim was filed and retaliation which continued after the claim was field – however, is inapplicable to the facts of this case. In fact, the *Wedow* court noted that its exhaustion-saving rule would not apply in a case where there was "a discrete act of discrimination . . . that occurred subsequently but was unrelated to the scope of the EEOC charges." *Id*. at 674. Instead this case is governed by another Eighth Circuit observation that:

> Although a plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC, it is well established that retaliation claims are not reasonably related to underlying discrimination claims.

*Wallin v. Minnesota Department of Corrections.*, 153 F.3d 681, 688 (8th Cir. 1998) (*citation and internal punctuation omitted*). *See also National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-15, 122 S.Ct. 2061, 2070-73 (2002). The Court finds that Richter's retaliation claims under Title VII and the MHRA must be dismissed for failure to exhaust administrative remedies.

In the present lawsuit, Richter additionally asserts a claim for wrongful discharge in violation of public policy. In general, in Missouri, employment relationships are at-will. Thus, generally absent an employment contract with a definite statement of duration an employment at will is created." *Luethans v. Washington University*, 894 S.W.2d 169, 172 (Mo. 1995) (*en banc*); *McCoy v. Spelman Memorial Hospital*, 845 S.W.2d 727 (Mo. App. [W.D.] 1993). In this case, Richter does not claim the protection of any employment contract.

An employer may terminate an at-will employee "for any reason or for no reason." *Crabtree v. Bugby*, 967 S.W.2d 66, 70 (Mo. 1998) (*en banc*). However, the at-will doctrine is subject to some limitations. For instance, pursuant to Tile VII and the MHRA, an employer cannot terminate an at-will employee for being a member of a protected class, such as "race, color, religion, national origin, sex, ancestry, age or disability" or by retaliating against individuals who participate in discrimination claims. In addition, Missouri recognizes a "public-policy exception" to the at-will-employment rule. *Fleshner v. Pepose Vision Institute, Inc.*, 304 S.W.3d 81, 92 (Mo. 2010) (*en banc*). As recently explained by the Missouri Supreme Court:

> The public policy exception to the at-will employment rule, often called the wrongful discharge doctrine, is very narrowly drawn. An at-will employee may not be terminated for refusing to perform an illegal act or reporting wrongdoing or violations of law to superiors or third parties.

*Margiotta v. Christian Hospital Northeast Northwest*, 315 S.W.3d 342, 346 (Mo. 2010) (*en banc*).

In the present litigation, Richter asserts that she has satisfied the requirements for the wrongful discharge doctrine at the pleadings stage by alleging that:

3

>   (1) she reported to Advance Auto that another employee was abusing the employee discount program;
>
>   (2) she reported to Advance Auto that another employee was abusing the sick leave policy;
>
>   (3) she reported to Advance Auto that another employee improperly provided a refund on a motorcycle battery to a customer; and
>
>   (4) she reported to Advance Auto that another employee had a $250.00 change order.

Advance Auto argues that these allegations are not sufficient to trigger the wrongful discharge doctrine.

It is well-settled that public policy sufficient for the wrongful discharge doctrine is not found "in the varying personal opinions and whims of judges or courts, charged with the interpretation and declaration of the established law, as to what they themselves believe to be the demands or interests of the public." *In re Rahn's Estate*, 316 Mo. 492, 501, 291 S.W. 120, 123 (Mo. 1926). Therefore, and in light of the strong preference for at-will employment, a wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body. *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 663 (Mo. 1988) (*en banc*). Absent such explicit authority, the wrongful discharge action fails as a matter of law. *Id.* However, in *Margiotta*, the Missouri Supreme Court reaffirmed that:

> The mere citation of a constitutional or statutory provision in a [pleading] is not by itself sufficient to state a cause of action for retaliatory discharge, the plaintiff must demonstrate that the public policy mandated by the cited provision is violated by the discharge.

*Margiotta*, 315 S.W.3d at 347 (*citations omitted*).

4

Richter argues that she has satisfied the *Margiotta* criteria by pleading that the conduct she reported violated MO. REV. STAT. § 570.030 [stealing] and 18 U.S.C. §§ 1341, 1343, 1346 [mail fraud, wire fraud, and theft of honest services]. The Court disagrees with Richter. While the *Margiotta* court stated that reference to specific laws was important, the Court also noted:

> A vague or general statute, regulation, or rule cannot be successfully pled under the at-will wrongful termination theory, because it would force the court to decide on its own what public policy requires. Such vagueness would also cause the duties imposed upon employers to become more vague and create difficulties for employers to plan around liability based on the vagaries of judges.

*Id*. at 346 (*citations and internal punctuation omitted*). Thus "not every statute or regulation gives rise to an at-will wrongful termination action." *Id*. At a minimum, the misconduct must be "serious." *Id*.

The *Margiotta* court does not offer a road map for ascertaining how serious the misconduct must be before the at-will employment doctrine will be overcome. Another court has noted that public policy at issue:

> must be "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual [and] the policy must be "fundamental" and "substantial."

*Harber v. American Airlines*, 2004 WL 2324112, op. at *2 (N.D. Cal. Oct. 12, 2004) (*quoting Stevenson v. Superior Court*, 16 Cal. 4th 880, 889-90, 66 Cal. Rptr.2d 888, 941 P.2d 1157 (1997)). Whether the test be a "vague or general statute" or "serious misconduct" or a "fundamental and substantial public policy," the Court concludes that the statutes and public policy invoked by Richter in this case under these facts are insufficient to displace the unquestioned preference for at-will employment in the State of Missouri. Any other rule would

invite an employee to claim that a boss committed assault when the boss yelled at the employee and, thus, defeat at-will employment. The exception [wrongful discharge] would swallow the rule. Richter's claim for wrongful discharge is dismissed.

Accordingly, it is

**ORDERED** that the *Defendant's Motion To Dismiss*, filed March 1, 2011 [Doc. 3] is **GRANTED**.

  */s/ John T. Maughmer*
  **JOHN T. MAUGHMER**
  **U. S. MAGISTRATE JUDGE**